UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SELESTINO SANCHEZ, SR.

v.   Case No. 8:05-cr-498-T-17MAP
     8:08-cv-2311-T-17MAP

UNITED STATES OF AMERICA.
_____

**<u>O R D E R</u>**

This cause is before the Court on Defendant Sanchez's motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. (Doc. cv-1; cr-797). A review of the record demonstrates that, for the reasons set out below, the motion to vacate must be denied.

BACKGROUND

In 2004 and 2005, federal, state and local authorities investigated a large drug trafficking organization operating in Florida, Texas and California which involved Sanchez and a host of other individuals. PSR ¶¶ 11-12. During the course of that investigation, law enforcement seized approximately 120 kilograms of cocaine, $1,000,000 in drug proceeds, and several vehicles. PSR ¶ 13.

Through the use of a variety of investigative techniques, including cooperating defendants, wiretap intercepts, trash pulls, and search warrants, law enforcement learned that Sanchez was supplying co-defendant Robert Masias and others with kilogram quantities of cocaine and pound quantities of methamphetamine. PSR ¶¶ 11- 12, 14-15, 17-18.

In March 2005, for example, a cooperating defendant – Antonio Nunez – who was

working with law enforcement at the time negotiated with Sanchez for the purchase of two kilograms of cocaine. PSR ¶ 14. Although Nunez had received cocaine from Sanchez in the past, he was unable to consummate this transaction with Sanchez because he did not have enough money to pay for the cocaine. PSR ¶ 14.

Similarly, between April and September 2005, authorities intercepted a number of telephone conversations in which Sanchez arranged drug transactions involving cocaine and methamphetamine. PSR ¶ 15. On April 26, 2005, for example, Sanchez told Masias that he was able to supply cocaine for $19,000 per kilogram. PSR ¶ 16. The next day, Sanchez supplied Masias with one kilogram of cocaine, which Masias then distributed to co-defendant Cesar Espinoza-Salazar. PSR ¶ 17.

Likewise, on August 4, 2005, Sanchez and Masias discussed the purchase of cocaine, and Sanchez tried to sell Masias four pounds of methamphetamine. PSR ¶ 18. Sanchez eventually distributed two pounds of methamphetamine to Masias and, approximately one week later, offered to sell Masias the remaining two pounds of methamphetamine. PSR ¶ 18.

On two occasions in October and November 2005, authorities collected curbside garbage at Sanchez's residence and recovered items containing trace amounts of cocaine, including a kilogram cocaine wrapper. PSR ¶ 19. Shortly thereafter, authorities executed a search warrant at Sanchez's residence, where they seized cocaine, a digital scale, and multiple cellular telephones. PSR ¶ 20.

Sanchez was ultimately indicted in the Middle District of Florida and charged with conspiracy to distribute and to possess with intent to distribute 5 kilograms or more of cocaine and 500 grams or more of methamphetamine, and distribution, and possession

with intent to distribute, 500 grams or more of cocaine. Doc. 588.

On the day his trial was scheduled to commence, Sanchez appeared with his attorney, Thomas Ostrander, and entered a guilty plea to these charges without a written plea agreement. Doc. 682 at 3-4, 14-15; Doc. 630. During the plea hearing that followed, Mr. Ostrander reviewed with Sanchez the conspiracy and distribution counts, and the government recited the factual basis supporting those counts, including Sanchez's drug transactions with Nunez and the fact that Sanchez had distributed both methamphetamine and cocaine during the course of the charged conspiracy. Doc. 682 at 8-15. 28-32. At the conclusion of the government's recitation, Mr. Ostrander acknowledged that the government would be able to prove these facts if the case proceeded to trial. Id. at 32.

Despite his prior guilty plea, Sanchez appeared at his sentencing hearing with a new attorney, Ronald Tulin, and denied two aspects of the relevant conduct the government had recited during his plea hearing. Doc. 700 at 10-16. First, Sanchez asserted that he had never met Nunez and, therefore, had never supplied Nunez with cocaine. Id. at 10-12. Second, Sanchez asserted that, although he had purchased methamphetamine for personal use during the time period at issue, he had distributed only cocaine during the course of the charged conspiracy. Id. at 13-16.

To resolve the factual dispute concerning Sanchez's relevant conduct, the government offered the testimony of the lead case agent, DEA Special Agent Dan Gordon. Id. at 22-36. Special Agent Gordon explained that, while monitoring wiretaps, agents had intercepted telephone conversations on August 4, 2005 and August 10, 2005, in which Sanchez had discussed or arranged methamphetamine sales to codefendant Masias. Id. at 24-27. Special Agent Gordon further explained that, during subsequent debriefings,

Masias admitted that he and Sanchez had been discussing methamphetamine during these conversations, that he had purchased two pounds of methamphetamine from Sanchez after the August 4, 2005 conversation, and that Sanchez had supplied him with well over 5 kilograms of cocaine and at least 10 pounds of methamphetamine prior to their arrests in December 2005. Id. at 26, 32, 35-36. Special Agent Gordon also testified that Masias had stated that, on at least 10 occasions, he had been present when Sanchez had received varying quantities of cocaine and methamphetamine from co-defendant Pedro Medina-Villegas. Id. at 30-31. More generally, Special Agent Gordon testified that the PSR accurately characterized Sanchez's offense conduct. Id. at 36.

After entertaining argument from counsel on the matter, this Court expressly credited Special Agent Gordon's testimony and concluded that Sanchez "ha[d] not met the test of acceptance of responsibility specifically with regard to the methamphetamine." Id. at 48. The Court accordingly declined to award Sanchez a reduction in his offense level pursuant to section 3E1.1, and sentenced him principally to a low-end sentence of 235 months' imprisonment. Id. at 57-58; Doc. 686 at 2-3; Doc. 684.

Sanchez thereafter filed an appeal in which he challenged the Court's admission of Special Agent Gordon's testimony at his sentencing hearing, as well as the Court's ultimate finding that Sanchez did not deserve credit for acceptance of responsibility. In a per curiam opinion filed on May 20, 2008, the Eleventh Circuit Court of Appeals affirmed Sanchez's sentence. Doc. 767.

Sanchez timely filed the present 2255 motion to vacate on November 19, 2008.

## DISCUSSION

In his 28 U.S.C. § 2255 motion to vacate, Sanchez argues (1) that he was allegedly

incompetent to enter his guilty plea due to the fact that he was illiterate and lacked any "educational training" at the time of his change of plea hearing; and (2) that his attorney, Ronald Tulin, was constitutionally ineffective at the time of the plea because he failed to raise the issue of Sanchez's competence with the Court.[1] Doc. cv-1 at 15, 17. For the reasons discussed below, Sanchez's claims are procedurally infirm and substantively without merit.

## I. SANCHEZ'S COMPETENCY CLAIM IS PROCEDURALLY BARRED AND SUBSTANTIVELY WITHOUT MERIT

It is well settled that claims that were previously available but were not raised on direct appeal ordinarily are procedurally defaulted and barred from consideration on collateral review absent a showing of cause and actual prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622-24 (1998); *United States v. Frady*, 456 U.S. 152, 166 (1982). In order to show cause for his procedural default, a section 2255 movant must demonstrate that there was some external impediment preventing his counsel from previously constructing or raising the claims at issue. *Weeks v. Jones*, 52 F.3d 1559, 1561 (11th Cir.), *cert. denied*, 115 S. Ct. 1841 (1995). In other words, "'a petitioner must demonstrate that the reason for failing to raise the issue is something that cannot be fairly attributed to him.'" *United States v. MacEwan*, 2008 WL 862396, at *10 (Mar. 31, 2008) (citation omitted).

In this case, Sanchez did not raise the issue of his competence either before this Court or on appeal. Sanchez has not tendered any reasons to excuse this procedural

---

[1] Sanchez's reference to Mr. Tulin in this latter regard is incorrect as Mr. Ostrander, not Mr. Tulin, represented Sanchez at his change of plea hearing.

default, and, in fact, has failed to address the matter entirely in his motion. *MacEwan*, 2008 WL 862396, at *10 (finding that section 2255 petitioner who had previously failed to raise claim that he was incompetent to stand trial and enter a guilty plea was procedurally barred from pursuing that claim in a section 2255 motion where he could not establish cause for his procedural default); *accord United States v. Riddick*, 15 F.Supp.2d 673, 676 (E.D. Pa. 1998).

Nor could Sanchez have succeeded on his competency claim even if he had raised it previously. "The legal standard for mental competency . . . is that [a] defendant has sufficient present ability to consult with his or her attorney with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him or her." *United States v. McDowell*, 2006 WL 3837490, at *1 (M.D. Fla. 2006 (Steele, J.); *see also Godinez v. Moran*, 509 U.S. 389, 396 (1993); *Dusky v. United States*, 362 U.S. 402 (1960).

Sanchez has not tendered any evidence to show that he could satisfy this legal standard here. The mere fact that he may have been illiterate and lacked any formal education at the time he entered his plea did not render him incompetent to do so. Many defendants who are convicted of drug crimes – either by way of a plea or after trial – have limited schooling and yet are fully capable of understanding the charges against them and of assisting their attorneys in the preparation of their defense.

Sanchez's belated claim of incompetency is also wholly belied by the record as well. In his PSR, Sanchez candidly admitted that, although he had suffered from alcohol and drug dependency issues in the past, he had no history of any mental or emotional problems and had never been treated for any such problems. PSR at ¶¶ 113-115. Sanchez further

6

indicated in his PSR that he had been gainfully employed by a variety of companies for the roughly eighteen years prior to his arrest, that he had also been married for roughly forty years, and that he and his wife had raised eight children. PSR at ¶¶ 103, 106-107, 121.

The Court's extensive and detailed colloquy with Sanchez at his change of plea hearing is similarly fatal to his competency claim. During the course of that hearing, Sanchez's counsel – Mr. Ostrander – advised the Court that he had met with Sanchez and an interpreter at least six times to discuss the actual written plea agreement, that Sanchez had rejected that plea agreement, that Sanchez understood the nature of the charges against him and the penalties to which he was subject, and that he had advised for a "long time" that he wished to plead guilty. Doc. 682 at 4-5, 34. Mr. Ostrander also reviewed with Sanchez, on the record, the conspiracy and distribution counts to which Sanchez was pleading guilty. Id. at 8-15.

In addition, Sanchez assured the Court under oath that he understood the charges against him, the penalties to which he was subject, and the essential elements of the offenses to which he was pleading guilty; that nobody had forced him, threatened him or promised him anything to get him to plead guilty; that he understood the sentencing guidelines and his right to persist in his plea of not guilty; and that he was waiving his right to go to trial and have the government prove its case. Id. at 8-18, 23-28, 34.

The Court also confirmed with Sanchez that he was not under the influence of any medication that might impact his mental state, and that, as evidenced by the following exchange, he had no mental health issues:

> THE COURT: . . Have you ever been treated for a mental illness?

| | | |
|---|---|---|
| DEFENDANT: | No. | |
| THE COURT: | Have you ever been to see a psychiatrist, a doctor that specializes in problems with people with their mind, or their emotions? | |
| DEFENDANT: | No. | |
| THE COURT: | Okay. Have you ever been to see anybody with regard to any sort of depression or been to see a psychologist for any sort of a problem in your life? | |
| DEFENDANT: | No. | |
| THE COURT: | Pardon me? | |
| DEFENDANT: | Never. | |

Id. at 23.

The government then recited the factual basis in support of Sanchez's guilty plea, including Sanchez's drug transactions with Nunez and the fact that Sanchez had distributed both methamphetamine and cocaine during the course of the charged conspiracy, and Mr. Ostrander acknowledged that the government would be able to prove these facts if the case proceeded to trial. Id. at 28-32. Sanchez then acknowledged that he had fully, completely and extensively discussed the case with Mr. Ostrander, that Mr. Ostrander had advised him of his constitutional rights and possible defenses, that Mr. Ostrander knew what he was doing, and that Sanchez was satisfied with Mr. Ostrander's representation of him. Id. at 32-33.

At the end of the hearing, the Court concluded that Sanchez was an able bodied male of average intelligence, and that he fully understood both the nature of the charges

to which he was pleading and the penalties to which he was subject. Id. at 34. The Court also concluded that Sanchez's plea was not product of any threats, force or promises, and that Sanchez clearly understood that, by entering his plea, he was admitting he was guilty of the charges against him. Id. The Court further found that Sanchez had been represented by adequate and competent counsel, who had advised him of his rights and possible defenses. Id. at 35-36. Most importantly, the Court found that Sanchez was entering his plea freely and voluntarily. Id. at 36.

This extensive and detailed plea colloquy, along with the information contained in Sanchez's PSR, fatally undermines his present assertion that he was incompetent at the time of his plea. The fact that neither of his trial attorneys – Messrs. Ostrander nor Tulin – raised the issue of Sanchez's competence with this Court further refutes his competency claim as well. *Cf. Riddick*, 15 F.Supp.2d at 677 ("Failure of defense counsel to raise the competency issue at trial, while not dispositive, is evidence that defendant's competency was not really in doubt . . ." (quoting *Watts v. Singletary*, 87 F.3d 1282, 1288 (11th Cir. 1996)).

## II. SANCHEZ'S SIXTH AMENDMENT CLAIM IS ALSO WITHOUT MERIT

Sanchez's ineffective assistance claim must also fail. To succeed on such a claim, Sanchez must show (1) that his attorney's performance fell below an objective standard of reasonable professional assistance, and (2) that he was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984), Sanchez's failure to prove either one of these prongs is fatal to any request for collateral relief. *Id.* at 697 ("there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one").

Sanchez's Sixth Amendment claim is predicated upon his allegation that he was incompetent at the time he entered his guilty plea. As this allegation is unsupportable, his ineffective assistance claim must necessarily fail. *See United States v. Howard*, 381 F.3d 873, 877-78 (9th Cir. 2004) ("To establish that his counsel provided ineffective assistance in light of [defendant's] alleged incompetency, [defendant] must first demonstrate that he was indeed incompetent to plead guilty.") *Sandgathe v. Maass,* 314 F.3d 371, 379 (9th Cir. 2002) (affirming district court's denial of defendant's ineffective assistance of counsel claim because defendant had offered no evidence for his asserted incompetence to plead guilty as a result of taking psychotropic drugs); *see also Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit").

The government filed its response in opposition to Sanchez's motion to vacate on December 22, 2008.[2] Sanchez had 25 days to file a reply to the response. Sanchez did not file a reply and did not file a motion seeking an extension of time to file a reply.

Accordingly, the Court orders:

That Sanchez's 28 U.S.C. § 2255 motion to vacate (Doc.cv-1; cr-797) is denied. The Clerk is directed to enter judgment against Sanchez and to close this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal

---

[2] On March 24, 2009, the government refiled the identical response for the purpose of attaching appellate briefs.

a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on March 25, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA: Christopher P. Tuite
Selestino Sanchez, Sr.